Good morning, Your Honors. This is an appeal from the grant of a summary judgment against my client, Plaintiff Herman Clavon, III. The district's court decision was based on several erroneous arguments that were presented by the defendants to the lower court. First, the court determined that Mr. Clavon is not disabled. The basis for the court's determination is the evidence submitted by Mr. Clavon was his declaration setting forth his physical disability. Mr. Clavon has an obvious physical disability. The court said that there was no evidence other than the declaration of Mr. Clavon and that that was self-serving, that there had to be some other corroboration of his physical disability. Our point has been and continues to be, respectfully, Your Honors, that not only is there the declaration, there's the direct evidence of Mr. Clavon. The right leg is slightly twisted. Let's say, counsel, at least for me, I don't have any problem with your point there. I agree with you that your client's affidavit is enough to establish the disability where it's not contradicted and it's obvious. But I am concerned about the want of evidence for, number one, how the dog came to be an, in quotes, service dog, and number two, in what way the service dog, if it is qualified as a service dog, ameliorated the disability about which your client complains. Can you address that, please? Yes. The service dog is selected by Mr. Clavon. Individuals that use service animals typically purchase them from a breeder. A lot of them are rescue dogs. Dogs that come from institutions, institution dogs, are very difficult to get. There aren't many available. That wasn't the evidence in this case, though, was it? He said he didn't recall where he got the dog, and he thought he got it from a pound in California. Isn't that what he said as a deposition? That's correct, Your Honor. And how does that comport with what you were just telling us? I was trying to leave the point that the decision by the district court is that disabled individuals cannot train their own dogs, that here Mr. Clavon could not establish that his dog is a service dog because he's not an expert trainer. It ignores federal law, and we see that in the California Code of Federal Regulations, 36 CFR. The record in this case said he didn't, he had not received any training himself on how to train dogs. It doesn't explain what he did to train the dog and what the dog was trained to do. Is there any evidence in the record of any of that except that he said, I trained it? Yes, Your Honor. He set forth in his deposition as well as in his declaration that the dog was trained to assist him with balance. He didn't say that, that he was trained. He said the dog assisted him with balance. He didn't say he trained him. He was walking on crutches to go upstairs. The dog could carry things in a pack. The dog was trained to pull him in a wheelchair. These are items that he attested to at his deposition. Do you have a record reference? Because in the record excerpts I saw from the deposition, it doesn't say any of that. Indeed, your client was unable to articulate any explanation or offer any evidence as to the way in which this dog helped him with his alleged disability. Disagree. We believe that the declaration says- I'm looking at the district court document 95-3. It's all laid out there. And as my colleague points out, the record has got a lot of information in here about what your client said at the deposition. And we have to go by the record that we have, not by one that one imagines after the case has been disposed of in the trial court. So I'm looking for help. I think my colleagues are looking for help on in what way, what evidence is there that was presented to the district court that shows how the service dog was able to help your client with his balance? It's kind of counterintuitive, so I'm really looking for some kind of information as to how that could happen. It's in the declaration. Counsel, are you relying on page 2 of the declaration where he says that Knight was trained to pull my wheelchair and Knight carried a backpack with your client's things in it? Is that what you're relying on? Yes, Your Honor. The declaration, not the deposition. Is that it? The declaration, correct. Not the portions of the deposition that are included within the excerpts of record. I am referring to the declaration, and we believe that the declaration sets forth sufficient facts to establish that my client's service dog was individually trained to assist him with managing a disability. So, counsel, I understand that, but to be specific, I have the same problem with understanding this argument about balance, but I'm looking at page 2 of the declaration, and to be specific, it seems to me that here there's a statement. There's not a lot of explanation. There's a statement that the dog was trained to pull the wheelchair and to carry things in the pack with things in it, carry a pack with your client's things in it. That's what I see. If someone's walking on crutches, and the plaintiff here depends, because he has no use of his right leg, he relies on either crutches or a wheelchair. If he's using crutches, he can't carry anything, so he has a pack for his dog that he places items into. The reference to balance is whenever he's going upstairs, if you lose your balance, you're going to fall down the stairs. With a dog there, with a leash taught, there is support. The record here shows that the plaintiff attested to facts that he trained his dog under California Civil Code Section 54.1, 54.2. An individual is, a disabled individual is permitted to train their own dogs. Indeed, most disabled people do train their own dogs. Do you agree that there's no comparable federal regulation at this point? The federal regulations do not address training, nor do they address licensing, Your Honor. So what are we to do with that? Well, 28 California... Okay, you're talking about California. Code of Federal Regulations, Section 36.104, states the definition for a service animal under federal law. And it states service animal means any dog individually trained to perform tasks for the benefit of an individual with a disability, included but not limited to pulling a wheelchair. I'm leaving parts of that out. I understand. But that is the definition under federal law. There is no licensing requirement. Now, under California law and the California Disabled Persons Act, looking at Civil Code Sections 54.1 and 54.2, the code says a disabled individual or a person authorized to train a dog for a disabled individual can take the dog to places of public accommodation for purposes of training. However, the dog, and these are the requirements under California law, not federal law, the dog has to be tagged as a service animal, and it has to be on a leash. Here, Plaintiff was in compliance with all of these requirements. The dog was tagged as a service dog. This tag was issued by a political subdivision of the State of California, the County of Los Angeles Animal Care and Services. Los Angeles County issues a small tag. It's shaped like the State of California, and it's blue in color. But the tag is problematic, too, isn't it, Counsel? No, it's not, Your Honor. Well, help me out then, would you please? There's testimony about several different dogs called Night, that this individual owned several different dogs called Night, and he wasn't sure that this tag belonged to this Night. So I don't know whether or not, I can't tell from this record, unless you can help me find a place, I can't tell whether this dog had its own tag or a different dog's tag. Your Honor, the reference, that comes up in two regards. One is the tag where there's a handwritten S. Right. And we know from looking at the actual tag, that is the license, and it says S00045. Okay, so my question, Counsel, is whose license is it? It is the license for the dog Night that was alive at the time the plaintiff went to the defendant's restaurant. It's the dog that was licensed in 2006. So my question, to be specific, is, is it the dog that was in the restaurant? And if so, where does the record tell me that? Yes, Your Honor. And in the record, the excerpts of record, Volume 2, Tab 3, and we reference Page 7 and Lines 18 through 21, is that the deposition of Mr. Clayvon. And the representation was made that I'm confused about which dog it was. Was this, which Night was it? And the statement was made that the tag number, identify the tag number, because we have a couple of different licenses, and identify the tag number S00045. In response, my client said, and this is at Page 7, Lines 18 through 21, that's the Night. That's the Night. Is it your position this dog had to have a tag that day? Under federal law, no. And under California law, the answer is no, because California law incorporates in the ADA. So, for example, if the service dog tag was not valid for whatever reason, it lapsed. Well, California law, under the under-acting disabled person, says any violation of federal law is also a violation of the California statutes. Ergo, federal law has no licensing requirement. Well, federal law does, though, at least according to our LVRC case, require that where the allegation that's necessary for you to succeed on this is counterintuitive. In other words, the idea that a service dog is going to help your client balance on crutches is counterintuitive to me. As I understand it in LVRC, you're required to provide persuasive evidence to support that contention. What persuasive evidence would you point us to in the record? What is in the record is the statement of the plaintiff that the dog assists him with balance and going upstairs. But in what way? But the status is not. Unquestionably pulling a wheelchair assists a disabled person with a disability. Counsel, as I understand it, correct me if I'm wrong, what we're dealing with here is the facts in this case. If I understand correctly, this is not a two-story deal. This is a one-story facility, is it not? That's correct. Okay, so he comes in there. In what way did the service dog help your client with his disability? Where's the persuasive evidence? The dog carries items. That is of great significance. Did that occur in this event, in this occasion? And if so, where in the record? Your Honor, I'm not going to state matters to the court that I don't specifically recall. The record consists of the declaration. But a dog is not excluded from going into a restaurant with a person just because at that very moment the dog isn't carrying something in its pack. Or at that very moment it's not pulling the person's wheelchair. In fact, you answered in an inauguratory when you were queried about what assistance your client had to ambulate that day, and you said crutches. Period. No dog assistance. He has the assistance dog as well, but what is he using to ambulate? He's using crutches to ambulate. He's not using a service dog to ambulate. Right. So he doesn't ambulate and you don't have any proof that he was carrying anything. So, in fact, there's no proof in the record that the service dog was actually assisting him at that particular time. Now, that may or may not be of consequence, but I think that's true, isn't it? If that is the case, and I would disagree, service animals, it's important that they are left with disabled people. Right. They're not separated at times. I'm talking about the state of the record. The record shows that whenever the plaintiff went in there, he had his service dog. His service dog is capable of carrying things in its back because he was dependent upon crutches for ambulating, and there is nothing in the record stating something was in the pack. Okay. That is correct. Is it true that you didn't plead the service dog in your complaint? You didn't reference the service dog in your complaint? And this only came up in response to the motion for summary judgment? The district court says that. Is that true? Your Honor, I didn't review the complaint. I did not draft the complaint. The complaint was drafted by Alex Hartunian. I associated in this case. So you don't know. I think that it does, but I don't know. I'm not going to represent that it does where I didn't review the complaint. All right. Your time has expired, but we'll give you some time for rebuttal. All right. Good morning, Your Honors. May it please the Court. This case is about an African-American plaintiff who is complaining of being discriminated against based upon race and disability. He asserts outrageous allegations that are inflammatory in nature and character, launched at a legitimate business enterprise, the Burger King, in Van Nuys, California. This record shows a pattern of conduct by both Claiborne, as well as his counsel, where he has launched into a pervasive litigation scheme, for lack of a better word, to use dogs as props to go into public facilities under the guise of disability, to gouge their pockets for money. Now, I've had a long history dealing with these cases by Mr. Murphy, but let's focus on this one case. In the case of Herman Claiborne, he laid no foundation whatsoever that he had a service dog. I think, to Your Honor's point, there is no foundation of skill to train a dog. So what are the standards that you're pointing to? Your brief talks a lot about that, about qualifications, and that this wasn't really a bona fide service dog. So where should we look for that? Well, the CFR, Your Honor, the Code of Federal Regulations, says that the dog must be trained. Right. So he alleges, in his declaration at least, that this dog was trained to pull his wheelchair and carry items in the backpack. Why is that no foundation, counsel? Well, Your Honor, any dog can carry things. A pet is distinguished from a service animal. A service animal must have the training to go into a public place and assist that person. But that's exactly what we're grappling with. And I'm asking you to tell me, what is the standard we should look to? All three of us have really asked that question repeatedly today. Well, the standard is some foundation of training, in other words, factual foundation. Mr. Claiborne, in his declaration, says the dog was trained, quote, unquote. But he lays absolutely no foundation as to when the dog was trained, the manner in which he went about training the dog, the duration or extent of the training. But that seems so circular to me. Since there isn't a standard we're trying to achieve, there isn't a particular bill that has to be wrong about what type of training is necessary. So this argument about foundation is really hard for me to calibrate. Well, it's a conclusory declaration if there isn't foundation as to what this training was. I think the legislature, the Congress, has created a robust statute to address the concerns of disabled courts. And the courts are the gatekeepers to make sure that the statute is not abused, make sure that the statute is being appropriately applied in the circumstances presented. And in this particular case, the court has to use a little bit of common sense and exercise discretion in determining what facts lead you to the conclusion, to sustain a favorable judgment that this dog is indeed a service animal and is adequately trained. Well, except that we're on summary judgment. So we construe the facts in light most favorable to the plaintiff. So let's assume for the sake of argument that there was a certificate from a trained, unquestionably qualified and trained instructor that said what he says in his declaration, that he was trained to assist in walking and balance, going upstairs on crutches, pulling wheelchair, et cetera, et cetera. Would that be enough? Well, in this particular case, Mr. Claiborne had crutches for balance and walking. And he asserts that he used the crutches for balance and walking. Right. No, but you're missing my point, I think, which is we're trying to figure out what foundation is required to establish a dog as a service animal. And you said, well, there's no indication of how the training was conducted. And I just said let's assume hypothetically that you had adequate foundation from a qualified trainer who said all the things that Mr. Claiborne says in his deposition. He was trained to carry a pack on his back, assist, et cetera, et cetera. Would that be enough? Well, sure, because the expert would be able to provide the foundation as to how the dog was trained and the extent of such training. No, no, I'm just saying if all we had was a bare-bones declaration of expert that said what Mr. Claiborne says in paragraph 2 of his declaration, would that be enough? No, it would not. And what case says that? Well, an expert has to lay foundation. This is rules of evidence, Your Honor. The expert would have to lay sufficient foundation as to what the basis for his or her opinions are. And what case says you need an expert opinion as to what a service dog is? You don't need an expert per se, Your Honor. That's not what we're saying. We're saying there has to be an adequate factual foundation as to the nature, extent. And is the basis for that that we're supposed to use our common sense? Is that what the answer to Judge Thomas' question really is? Well, no, I think, Your Honor, there are some generally accepted standards that experts would provide. But you just said we don't need an expert necessarily, counsel, so. Not necessarily, Your Honor, but there should be at least some factual foundation to support the conclusion. Well, but then we're all in the same conundrum here. Specifically, if you're a trial judge and someone comes in with a case like this, what are you going to require from the plaintiff to establish that the dog in question is an, in quotes, service dog? You said it relates to training. So what are the criteria that the trial judge is supposed to consider in determining whether this is a service dog? First, Your Honor, the trainer would have to present evidence that he or she is competent to train a service dog. In other words, they have education, skill, and experience. Now, is that based on common sense or some regulation? Well, no, it would be based on facts. It would be based on facts. But you've got to help us here. Now, you're saying that it's kind of a tautology you've got here. What specifically does the plaintiff have to show in terms of the trainer? College degree? Animal shelter credentials? What's required in your definition to show that a trainer is eligible to produce a service dog? I would say education. What education? Reading of books, classes, taking classes. Secondly, experience. In other words, is this the first time they've ever trained a dog? Have they done this in the past? There has to be some foundation that they have some familiarity and experience with training dogs. In this case, Mr. Claibon is the plaintiff in three different lawsuits referred to in the motion seeking a pre-filing order. Do his three previous ventures into this qualify him as having experience? Well, he didn't have experience training dogs, and that was the issue in those cases as well. The issue is Mr. Claibon is a self-proclaimed dog trainer, apparently, without any foundation. He basically admitted at deposition he took no classes, he read no books, he doesn't recall where he actually received this dog. He may have gotten it from the pound. The dog, there was no foundation as to the dog's prior experiences, his encounters with the public, his demeanor. There was no foundation laid that this dog could serve as a service animal in this place in this time. And Mr. Claibon laid no foundation that the dog was adequately trained in that regard. He asserts that the dog is trained, but laid no foundation as to what he did to train the dog. Counsel, I'd like to shift gears a little bit if I could. My question is whether your client is going to argue that he lacked sufficient evidence that he's disabled, that the plaintiff lacked sufficient evidence that he's disabled. Well, that is our argument, Your Honor, and consistent with the court's finding, the court found that Mr. Claibon asserted a disability, which he claimed was obvious, but did not provide any corroborating evidence to support that. So what's wrong with his own testimony, if you will, his own declaration, asserting that he has an impairment of a major life function, can't walk because of this leg? I believe it was because he had polio when he was a child. What's wrong with that? Well, unlike other cases where you have a disability that is not, quote, unquote, obvious, whether it be a mental disability or insulin disability, to the extent that this is an obvious disability where one leg, he claims, is shorter than the other or is twisted, a simple photograph, a simple document corroborating that disability would do. A neighbor, a family member, anyone that has experienced or encountered Mr. Claibon would be able to confirm and corroborate his disability. This isn't a situation where he had to obtain a doctor's report. But he asserted certain facts. In what way did you counter those facts as he alleged them? Well, the issue was, in response to discovery, he provided no. Okay, but you're not answering my question. I know what he said. What did you say in response? Did you say, no, no, he's not disabled? Well, the evidence shows in this record, and we submitted a declaration, that Mr. Claibon walked without this dog inside the restaurant. I don't know if. Okay, well, that doesn't specifically address whether or not his leg was short or anything like that, right? Well, it's true. And for purposes of summary judgment, don't we have to take his allegation that he has a disability as defined under the act, at least the federal act, and probably the state as well? I mean, that's not your major problem, obviously. But realistically, that's not your case here, isn't it? That's not a big deal to you. Whether he was disabled. He alleged it. You didn't really directly say, no, he's not. Right. Well, there's a lack of evidence, Your Honor. And the Rohrer decision and the Head decision is what was cited to support the proposition that a declaration in and of itself is sufficient. And we would distinguish the Rohrer case, as we have in the brief. In the Rohrer case, there were doctor's statements along with the declaration to support the fact that there was an insulin dependency, which required travel restrictions, eating restrictions. It's a very different type of disability. Very different kind. What's wrong with a plaintiff coming in? I don't want to spend a lot of time on this, counsel. But to just follow up on Judge Smith's question, this individual came in, and he's got the statement that his ability to walk is impaired because he's got this. Because he's got polio. One leg is shorter than the other. He's got torn rotator cuffs from using crutches, he says. Did you do anything to refute that? Word summary judgment. Well, there was no evidence in response to discovery to refute that. And that was the main issue, I think. There was no evidence. We deposed him. We asked him, how does this disability affect you? I have polio. I had polio. Very conclusory, one-word answers that the court could look at the deposition transcripts. Very elusive. And so we did our best to counter those arguments with evidence, but there's no evidence forthcoming. And we filed the motion for summary judgment based upon the lack of evidence. He's going to have to bear the burden of proof at trial. And if he goes to trial and just says under oath, I have a disability, one leg is shorter than the other, that's not going to be sufficient. He's going to have to show his leg. He's going to have to produce. I don't think there's any doubt, probably in the record, that he has a disability. And the question is whether it affects a major life activity under the ADA. I mean, you can say that you have a physical impairment that may not qualify. I mean, my guess is that, I mean, I think he's got enough here to show that he's got an impairment. There's no question about that. The question is, I think, whether there's sufficient proof that it limits a major life activity is contemplated under the ADA. Well, sure, sure. And the evidence shows that he's – the evidence in the record shows that he was able to walk. He was seen walking without at least the dog. Can I shift the focus here for just a second? Once Judge Wynn joined our bench, this was transferred to Judge Collins, who I think at that point was the chief judge. And she entered a prefiling order against counsel for Mr. Claiborne, citing nine cases that are referred to. I just want clarification from you. In these nine cases, in which Mr. Claiborne is featured in three, I gather that all of these cases were lost by the plaintiff. Is that correct? Well, the cases that I was involved in, I'm sure of it, Your Honor. Of course, I haven't researched each of them. But I believe they're substantially identical cases. If the court looks at the proximity of time which he alleged to have visited those facilities, they're all in close proximity to the visit to the Burger King. And we made that a point under the Molesky decision. And I gather that the complaints and the circumstances were substantially identical in each of these, right? Absolutely, Your Honor. Has counsel for Mr. Claiborne been referred to the California State Bar by chance? Yes, he has. And has there been any action, public action, upon that? The action is pending this court's decision. I see. Okay. Any further questions? No, Your Honor. Thank you. Thank you. We'll give you two minutes for rebuttal. There's nothing in the evidence showing that the complaints are the same. It's easy to make statements that these cases are the same, but where is it in the record? The facts of each individual case are very different. It's easy to characterize cases as, these are all ADA cases. That's true. Service dogs are very important for helping disabled people. Sadly, there are still many places of public accommodations, hotels and restaurants in particular, that refuse to allow dogs. This pre-filing order that was issued against me is unbelievably damaging to me. I'm a practicing attorney. Whenever I look at this case, which I did not file, but I take a look at the case and do my due diligence and I see there's a video, and I would strongly ask, please look at the video. It shows discrimination. Whenever there's an allegation of race discrimination, to make out a prima facie case, and we set this out clearly in our briefs, you need to show he's African American. He went to a place of public accommodation. He's told to get out. Saying to an elderly African American man. You dropped that part of the complaint, didn't you? No. Well, that's what the record shows. No. No, Your Honor. In any event, it's improper rebuttal because you didn't argue it in your first opening and he didn't deal with it. So why don't we focus with the disability? The claims are made here that this case is frivolous, and that's the basis for issuing a pre-filing order. We know and we pointed to the Claivon v. TSAJBR case where there was a discovery sanction issued. Whenever I'm engaged in trial, I couldn't meet and confer. A motion got filed. The motion got granted. We ended up settling the case and an injunction was issued against the Ramada Burbank requiring they allow service dogs. The facts of this case, it's not a post hoc, let's take a look. Oh, you lost the case. It must have been frivolous. What did I have whenever I'm going and taking a look at this case? I have the statements of the client that these events occurred, and I'm able to look at a video and the audio on this video is very clear. All these arguments about the dog's not a service dog, he's not disabled, these are all arguments made up after the fact by the lawyers. Thank you, counsel. Your time has expired. The case just heard will be submitted for decision.
judges: Thomas, Smith, Christen